IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MIDWESTERN GAS ) | |
| TRANSMISSION COMPANY, ) | |
| ) | Case No: 3:06-cv-0256 |
| Plaintiff, ) | Judge Trauger |
| ) | |
| v. ) | |
| ) | |
| 3.90 ACRES IN SUMNER COUNTY, ) | |
| TENNESSEE, CHARLES CARTER, and ) | |
| BRENDA CARTER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Pending before the court in this land condemnation action is the plaintiff's Motion in Limine to Exclude Testimony of Harold Carman. (Docket No. 94.) Mr. Carman is a real estate appraiser offered by the defendants to provide expert testimony on the primary issue in this case, that is, the amount of "just compensation" owed to the defendants for the plaintiff's taking of a portion of the defendants' property in order to lay a natural gas pipeline through the property. (*See* Docket No. 118 at 1; Docket No. 95 at 2.) The property at issue is a 168.74-acre stretch of rolling farmland that is improved with a house, a barn, and a few other structures and is located on Lauderdale Lane in Bethpage, Tennessee in Sumner County. (Docket No. 95 at 2.) In preparing to testify in this matter, Mr. Carman provided an appraisal report, in which he stated that just compensation due to the defendants/land owners was $1,038,000. (Docket No. 95 Ex. 1 at 5.)

Underlying that estimate was Mr. Carman's assumption that the farmland property at

1

issue would be put to its "highest and best use," the standard definition of which is the "reasonably probable and legal use of vacant land or an improved property, which is physically possible, appropriately supported, financially feasible, and that results in the highest value. The four criteria the highest and best use must meet are legal permissibility, physical possibility, financial feasibility, and maximum productivity." (Docket No. 95 Ex. 1 at 56.)

Relying on years-old data and various assumptions concerning the continued growth of the Nashville metro area, the continued demand for property in Sumner County and the escalation of property values in the area (assumptions that are less realistic at present, in light of current economic circumstances, than on the effective date of the appraisal – July 26, 2007), Mr. Carman offered the opinion that the "highest and best use" of the non-improved land was for it to be subdivided into 144 residential lots and then sold off, lot by lot. (*See id.* at 23-24.) That is, Mr. Carman estimated that continued growth in the area, along with the property's general amenability to large-lot subdivision, could have resulted in a relatively easy and financially profitable transition of the farmland into a residential subdivision. (*Id.*)

While the appraisal does vaguely mention that the land "allows for a wide range of uses," the appraisal report essentially exclusively focuses on the land's potential for subdivision and residential development. (*See id.*) For instance, using a subdivision plat map prepared exclusively for this litigation, Mr. Carman calculates damages from the pipeline on a lot-by-lot basis, claiming that the pipeline damaged the value of individual residential lots, rather than assessing damage to the land as a whole. (*See id.* at 33-34, 44.) It is also clear that Mr. Carman's description of how the property could be subdivided (and then damaged) was not based upon any concrete plans by the landowners to actually put their property to this use.

2

(Docket No. 95 at 4; Docket No. 95 Ex. 3 at 3.) Mr. Carman's proposed expert testimony in this trial, filed with the court, essentially restates the conclusions found in his appraisal and offers no substantive consideration of uses other than this "highest and best use." (Docket No. 118.)

Through the pending Motion *in limine*, the plaintiff moved to exclude Mr. Carman's purported expert testimony as, among other things, "entirely speculative," "unreliable," and "not based upon acceptable methodology applied to the facts of the case." (Docket No. 95 at 2.) In addition to objecting to Mr. Carman's speculation regarding the "highest and best use," the plaintiff also objected to Mr. Carman's damage calculation methodology (the "lot method") and his failure to calculate the "fair market value" of the property after the taking. (*See id.* at 10-13.) In response, the defendants conceded that Mr. Carman had made some errors in his calculations, but they defended his basic methodology, credentials and his "highest and best use" analysis. (Docket No. 116 at 1-8.)

At the December 21, 2009 pre-trial conference, the court directed additional briefing on the somewhat unsettled, but potentially dispositive, issue of whether Mr. Carman's testimony regarding the "highest and best use" of the land would result in an untenable "overemphasis" on that use. *See State v. Parkes*, 557 S.W.2d 504, 508-09 (Tenn. Ct. App. 1977). The parties have filed that supplemental briefing, and it is clear that Mr. Carman's proposed testimony would result in such an overemphasis, and, therefore, his testimony must be excluded.

## ANALYSIS

In evaluating proposed expert testimony, the court maintains a "gatekeeping" role, in which it must evaluate, based on all of the circumstances, the relevance and reliability of all expert testimony, whether the testimony offered is "scientific" or not. *Kumho Tire Co., Ltd. v.*

3

*Carmichael*, 526 U.S. 137, 141 (1999); *see also Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 593-94 (1993); Fed. R. Evid. 702.  That is, the court is to ensure that the expert, whatever his field, "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. Consistent with this, a body of substantive Tennessee law, which also governs these proceedings, has developed that bars expert testimony in land condemnation/just compensation proceedings if that testimony would result in the jury's placing an undue emphasis on a particular, potential use of the property at issue.

Indeed, while courts retain significant discretion in this area and there is no "broad prohibition against description and valuation of a particular use" of a piece of land, "a balance must be struck," such that an expert's testimony about the "highest and best use" does not "reach[] the point of being an unreasonable emphasis on that use and not merely an explanation of the witness's valuation processes." *Parkes*, 557 S.W.2d at 508; *see also Davidson County Bd. of Education v. First Am. Nat'l Bank*, 301 S.W. 2d 905, 909 (Tenn. 1957).  That is, under Tennessee law, in making the "just compensation" determination, "the jury must consider all reasonable, available uses to which the property is adapted.  Therefore, the value of the property *may not be based only upon* its 'highest and best' use." *City of Gatlinburg v. Fox*, 1996 WL 673992, *4 (Tenn. Ct. App. Nov. 22, 1996) (internal quotations and citations omitted)(emphasis added)

Various Tennessee courts since *Davidson County* and *Parkes* have weighed in on where the line between mere "description and valuation of a particular use" and "overemphasis" or "unreasonable emphasis" on the "highest and best" use may be.  For instance, in *Rummage*, the

4

Tennessee Court of Appeals, quoting *Parkes*, stated that the "concern underlying this rule is to prevent overemphasis of any single use of the property, and especially that overemphasis which results from depicting excessive details of a possible use." *State v. Rummage*, 1991 WL 122885, *4 (Tenn. Ct. App. July 10, 1991). While the valuation expert in *Rummage* testified as to the "highest and best use" and generally discussed the area surrounding the farmland at issue and the favorable "future potential" for commercial development, he "did not attempt to value the property for a single purpose." *Id.* at *3-5. Indeed, while stating that the property was "in the path of development," the expert cautioned that the property was a "right good livestock farm" and that the landowners' intentions as to the property were unknown. *Id*. In light of the fact that the fair market value/just compensation testimony was "based on several circumstances," only one of which was the highest and best use, the court concluded that the testimony was permissible. *Id.*

Additionally, courts have found that "overemphasis" may result if the valuation expert is "permitted to present evidence that strays to a consideration of [] unlikely contingencies" or is allowed to offer considerable testimony regarding uses with a "remote" likelihood of actually being put into place. *Parkes*, 557 S.W.2d at 508. While an expert may testify to possible future uses of the land, such hypothetical uses must be "sufficiently supported by the record" before the expert may offer substantial testimony on such a use. *State v. Veglio*, 786 S.W. 2d 944, 948 (Tenn. Ct. App. 1989). For instance, in *Veglio*, while the expert testified as to the potential for commercial development of the property at issue, that testimony was permissible largely because "[t]here was ample evidence of commercial development in the area" and the testimony, on balance, was "not based on an unreasonable emphasis" of a particular use. *Id.*

5

Here, as the plaintiff argues, essentially without contradiction by the defendants, Mr. Carman's testimony would create an untenable risk of "overemphasis." As discussed above, Mr. Carman arrives at the value of the farmland at issue exclusively by envisioning it as a residential subdivision, with specific lots in a specific arrangement. (Docket No. 95 Ex. 1 at 23-24, 44.) Therefore, unlike the expert in *Rummage*, Mr. Carman does not attempt to value this property as a farm with future development potential, but, rather, he seeks to value this land *exclusively* based upon the exceptional logical leap that this property would be subdivided into a certain, specific number of residential lots, all of which would then be sold off at a certain price. The vastness of this logical leap is enhanced by the fact that, as the plaintiff's counsel conceded during the pre-trial conference, there have never been any plans to subdivide this property, and the subdivision plat map that Mr. Carman uses in support of his argument was prepared for this litigation.

Therefore, Mr. Carman's proposed testimony is highly problematic in its exclusive reliance on a single, detailed, yet entirely speculative, use of the property. Additionally, as they recognize in their supplemental briefing on this issue, Mr. Carman is the defendants' only land valuation expert. (Docket No. 127 at 2.) As the defendants propose to put forth only a single land valuation expert, who will testify as to only a single, wholly speculative use of the property, the risk of overemphasis of this use is too great. Therefore, Mr. Carman may not testify. As the testimony of Mr. Carman is clearly not permissible on this basis, it is not necessary to address the plaintiff's other specific objections to Mr. Carman's calculation methods.

The defendants, perhaps anticipating this result, have requested that, in the event that Mr. Carman is excluded, the trial date, currently set for January 5, 2010, be continued to permit them

an opportunity to locate a new land valuation expert. (*Id.*) The defendants contend that the plaintiff has already deposited "an initial tender" in this matter, and "no expert has opined that a sum any less than the tender is due the landowners." (*Id.* at 2-3.) Therefore, the defendants claim that the plaintiff would not incur any financial harm from a continuance. (*Id*.)

While the plaintiff will undoubtedly incur some additional costs from this delay, most notably the attorneys' fees associated with evaluating a new expert, these costs must be viewed as fairly minor in light of the fact that this litigation has proceeded, vigorously contested, for almost four years. Therefore, the court will continue the trial date and afford the defendants a reasonable opportunity to retain a new land valuation expert.

For the reasons discussed herein, the plaintiff's Motion in Limine to Exclude Testimony of Harold Carman (Docket No. 94) is **GRANTED**, and Mr. Carman is excluded from offering his proposed testimony in the trial of this matter. Additionally, by separate Order, the court will continue the trial date, permitting the defendants an additional opportunity to retain a new land valuation expert.

It is so ordered.

Enter this 30th day of December 2009.

ALETA A. TRAUGER
United States District Judge

7